Kevin BARTON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 18A04–0910–CR–609.

Court of Appeals of Indiana.

Nov. 10, 2010.

Transfer Denied Jan. 6, 2011.

Donald K. McClellan, McClellan & McClellan, Muncie, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Kevin Barton appeals his conviction for failure to return to the scene of an accident resulting in death[1] as a Class C felony. Barton raises the following three restated issues:

I. Whether the trial court erred when it denied Barton's motion to dismiss, which asserted that the State was barred under collateral estoppel principles from prosecuting him for failure to return to the scene of an accident resulting in death;

II. Whether certain statements made by the State during rebuttal closing argument constituted Doyle[2] violations; and

III. Whether the trial court erred when it refused Barton's mistake-of-fact instruction.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Around 1:30 a.m. on October 8, 2006, Jamie Beaty ("Beaty"), a twenty-three-year-old female, and her boyfriend, David Pyles ("Pyles"), were at a party near Yorktown, Indiana, which is located between Anderson and Muncie. Pyles got mad at Beaty and left the party on foot, to walk back to Muncie to retrieve his car. Beaty followed him as he walked along State Road 32. Pyles was walking ahead of Beaty and told her to quit following him; the two continued to argue as they walked. At some point, Pyles looked back and saw Beaty in the road, with headlights fast approaching, and he attempted to reach her to get her out of the way. Pyles explained that the next thing he knew, he was knocked down and a car had hit Beaty. That car, later determined to be a Nissan driven by Steven Brinkley, did not stop. Moments later, Beaty's body was run over and dragged by another vehicle, later determined to be Barton's black F–150 pick-up truck. Beaty died at the

---

1. *See* Ind.Code §§ 9–26–1–1, 9–26–1–8.

2. In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), discussed more fully in Section II, the United States Supreme Court held that a defendant's Fourteenth Amendment due process rights are violated if a prosecutor uses the defendant's post-arrest, post-*Miranda* silence to impeach him or her. *Id.* at 619, 96 S.Ct. 2240.

scene. In July 2007, Brinkley was convicted of, among other things, Class C felony failure to return to the scene of an accident resulting in death, and we affirmed his conviction by unpublished decision. *Brinkley v. State*, No. 18A02–0709–CR–826, 2008 WL 2580764 (Ind.Ct.App. June 30, 2008), *trans. denied.*

The State also charged Barton with Class C felony failure to return to the scene of an accident resulting in death. In addition, the State charged Barton with Class A misdemeanor operating while intoxicated endangering a person and Class D felony resisting law enforcement, but later dismissed the resisting law enforcement charge. In May 2009, prior to his jury trial, Barton filed a motion to dismiss the charge of failure to return to the scene of an accident resulting in death, arguing that collateral estoppel barred the State from pursuing the charge because Brinkley had already been convicted of the same offense. After a hearing, the trial court denied his motion.

At Barton's trial, Brinkley's passenger, Benjamin Gibson testified that he and Brinkley had been drinking throughout the night at various parties and establishments. As they were heading home to Anderson, Brinkley was driving down the road, when suddenly they saw what appeared to be a person, later determined to be Beaty, lying in the road. Before Brinkley had time to react, the Nissan he was driving hit her. Gibson felt two quick thumps and said, "I think you hit someone." *Tr.* at 242. Brinkley kept driving until Gibson persuaded him to return to the scene, where they stayed briefly but did not report their involvement to authorities at the scene before leaving.

Barton, who was then, and had been for fifteen years, the Director of Transportation for Muncie Indiana Transit System ("MITS"), also testified. He stated that he had met his friend Julie Johnson that night in Yorktown for "a couple drinks," and as he was driving back toward Muncie from Yorktown, he was on the phone with a former girlfriend, Janice Litz, when he suddenly saw a person lying on the ground and another person next to him or her, and although he initially drove past them, he then turned around and went back to assist. *Id.* at 820. He stated that he pulled to the side of the road, exited his vehicle, and ran back to find Beaty in the road, not moving, and Pyles over her. Barton testified that he then saw an oncoming car, which he tried to flag down and stop, but which instead accelerated and ran over Beaty and did not stop. Barton testified that it was a white, older vehicle with shiny wheels and a "bad muffler job." *Id.* at 851. Barton explained that then another vehicle, a Green Ford Explorer, stopped to assist, and he ran back to his truck and, using his MITS cell phone, called 911. Barton stated that when he tried to call 911, he somehow reached Johnson, so he hung up and redialed 911, telling the operator that "A guy just hit a girl." *Id.* at 836.

Barton did not provide the 911 operator with his name, address, or registration number. He did not mention the description of the car that he saw run over Beaty. According to 911 records, the call was somehow disconnected, but not by the 911 center. Barton's cell phone records indicated that, during the relevant time frame, Barton dialed Litz at 1:18 a.m., Johnson at 1:24 a.m., and 911 at 1:27 a.m. After the 911 call, Barton said he went back to the scene, but another man, later identified as John Farris, was at that point rendering assistance to Beaty. Barton testified that he left the scene because he thought Farris was an emergency medical technician ("EMT") and that Farris told him to "get back and get out of here." *Id.* at 851.

Barton's truck was stopped by police not far from the accident location.

Farris, a former United States Marine, testified that, as he was traveling from Yorktown to Muncie that night, he came upon the scene, where he saw a person lying in the road (later identified as Beaty) and someone (later determined to be Pyles) leaning over her. Farris further testified that, as he slowed and stopped to assist, he saw an F–150 truck parked on the side of the road. Farris exited his vehicle and began to directly assess Beaty's condition and control the scene. He spoke to the 911 operator, and per her instructions, he told all bystanders that had assembled at the scene to remain. However, he noted that a man, later determined to be Barton, "started booking it" to his truck. *Id.* at 274. Farris said that Barton did a u-turn in his truck, and drove away toward Muncie. A woman who had stopped at the scene got in her own car and followed Barton's truck, and she recorded its license plate number, which was reported to authorities. Muncie police officers encountered Barton a short distance from the scene of the accident and stopped him. Officer Richard Howell, one of the Muncie officers who stopped Barton, testified that he observed "fluid and flesh matter" under the front bumper, in the passenger wheel well, and on the front tow hook. *Id.* at 446–47. Larry Harless of the Yorktown Police Department, who also responded and was involved in locating Barton's truck, similarly observed that the F–150 had a "flesh-type substance" on it. *Id.* at 407. Evidence technician Bruce Qualls examined the truck at about 2:30 a.m. and saw small bits of moist tissue from front to back along and under the passenger side of Barton's truck. Barton's truck did not exhibit damage consistent with striking an upright pedestrian. Dr. Janet Roepke, a physician pathologist, testified that Beaty's death was caused by blunt force injuries, but she could not determine how many times she was hit.

During trial, when the trial court received argument regarding final instructions, Barton submitted a proposed jury instruction regarding mistake of fact. It read:

> It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense. I.C. § 35–41–3–7.

*Appellant's App.* at 35. The trial court refused to give the instruction over Barton's objection. *Tr.* at 865.

Both parties presented closing arguments. During the rebuttal portion of the State's closing argument, the prosecutor referred on four occasions to Barton's trial testimony where he claimed to have seen a white car run over Beaty. The prosecutor noted that Barton's exculpatory statements about the white car were the first time anyone had heard about a white car running over Beaty. Barton did not object, but later, outside of the jury's presence, Barton asserted that the prosecutor's remarks constituted prosecutorial misconduct and a violation of his constitutional rights because the remarks effectively suggested that if there really was a white car that ran over Beaty, Barton would have mentioned it sooner. Barton argued that the prosecutor's statements were effectively an improper reference to Barton's *post-Miranda* silence, which violated his Fifth Amendment rights. The parties and the trial court discussed the issue at some length. In an attempt to cure any error that may have occurred by the prosecutor's comments, the court fashioned an instruction and proposed that it be read to the jury. It stated:

You are instructed that in order to find the Defendant guilty in Count 1, the Defendant's vehicle must have struck Jamie Beaty.

*Id.* at 939. As the trial court worked to determine if the parties were satisfied with this measure, counsel for Barton expressed that "We're fine, Judge. Let's just read them the instruction and get [the jurors] back there." *Id.* at 943. He continued, "We don't want a mistrial." *Id.* at 944.

The jury found Barton guilty of Class C felony failure to return to the scene of an accident resulting in death. Barton now appeals.

## DISCUSSION AND DECISION

### I. Indiana Code § 9–26–1–1

█ Barton argues that the trial court should have granted his motion to dismiss, which sought dismissal of the failure-to-return-to-the-scene charge on collateral estoppel grounds. Specifically, Barton's motion asserted, "This State is precluded as a matter of law, from preceding [sic] against the Defendant ... since it has already been determined that Steven L. Brinkley caused the death of Jamie Beaty on October 8, 2006 and/or the Steven L. Brinkley 'accident' resulted in her death." *Appellant's App.* at 92.

█ The relevant statute, Indiana Code section 9–26–1–1, requires a driver of a vehicle involved in an accident that results in the injury or death of another person to stop, remain at the scene, and provide his name, address, and vehicle registration information. When Barton was charged in 2007, it read:

The driver of a vehicle involved in an accident that results in the injury or death of a person shall do the following:

(1) Immediately stop the vehicle at the scene of the accident or as close to the accident as possible in a manner that does not obstruct traffic more than is necessary.

(2) Immediately return to and remain at the scene of the accident until the driver does the following:

(A) Gives the driver's name and address and the registration number of the vehicle the driver was driving.

(B) Upon request, exhibits the driver's license of the driver to the following:

(i) The person struck.

(ii) The driver or occupant of or person attending each vehicle involved in the accident.

(C) Determines the need for and renders reasonable assistance to each person injured, including the removal of or the making of arrangements for the removal of each injured person to a physician or hospital for medical treatment.

(3) Immediately give notice of the accident by the quickest means of communication to one (1) of the following:

(A) The local police department, if the accident occurs within a municipality.

(B) The office of the county sheriff or the nearest state police post if the accident occurs outside a municipality.

(4) Within ten (10) days after the accident, forward a written report of the accident to the:

(A) state police department, if the accident occurs before January 1, 2006; or

(B) bureau, if the accident occurs after December 31, 2005.

Indiana Code § 9–26–1–1.[3] If a driver involved in an accident fails to meet any of

---

**3.** Indiana Code section 9–26–1–1 was amended effective July 2008 and April 2009; the

the duties imposed by the statute, he or she commits a criminal offense. Ind.Code § 9–26–1–8; *Barber v. State*, 863 N.E.2d 1199, 1205–06 (Ind.Ct.App.2007) (as elements are listed in conjunctive, person commits criminal offense in failing to adhere to any one of the requirements), *trans. denied.* If the accident results in the death of a person, the offense is a Class C felony. Ind.Code § 9–26–1–8(a)(2). "The purpose of the statute is to provide prompt aid for persons who are injured or whose property is damaged and to sufficiently establish the identity of the parties so that they and police authorities may know with whom to deal in matters growing out of the accident." *Runyon v. State*, 219 Ind. 352, 357, 38 N.E.2d 235, 237 (1941).

 A driver's knowledge of the fact that an accident with injury has occurred is a necessary element of the proof in a prosecution for failure to stop. *State v. Gradison*, 758 N.E.2d 1008, 1011 (Ind.Ct.App.2001) (*citing Micinski v. State*, 487 N.E.2d 150, 152–53 (Ind.1986)). However, the driver need not have actual knowledge that an accident has resulted in injury to be convicted under the statute. *Id.* Where conditions were such that the driver should have known that an accident occurred or should have reasonably anticipated that the accident resulted in injury to a person, the requisite knowledge is present. *Id.*

 Barton argues that he cannot be prosecuted for failing to stop at or return to the accident because this court in *Brinkley* determined that Beaty's death was caused by Brinkley. His theory is that because Brinkley, not he, caused Beaty's death, he cannot be prosecuted under the statute. Barton is misguided, however, as Indiana Code section 9–26–1–1 does not require that the charged driver caused

the death or injury that ensued. "[F]ailing to stop after an accident resulting in death is itself a very serious crime completely separate from whether the defendant caused the victim's death." *McElroy v. State*, 864 N.E.2d 392, 398 (Ind.Ct.App. 2007), *trans. denied.* The duties of Indiana Code section 9–26–1–1 apply to a driver of a vehicle involved in an accident, regardless of whether the driver's vehicle struck anyone or anything. *Armstrong v. State*, 848 N.E.2d 1088, 1092 (Ind.2006), *cert. denied*, 549 U.S. 996, 127 S.Ct. 513, 166 L.Ed.2d 370 (2006); *Barber*, 863 N.E.2d at 1206 (statute does not require that driver be "criminally responsible," or responsible for accident at all, before duty to stop and remain at scene arises; driver need only be "involved" in accident). Thus, contrary to Barton's assertion, the statute does not require a causal relationship with the death, only involvement in the accident.

 Here, the evidence showed that Brinkley's Nissan and Barton's pick-up truck both struck Beaty, who died at the scene. Authorities observed fleshy tissue from front to back along the passenger side of Barton's truck. Although Barton stopped briefly and made a call to 911, he did not provide his name, address, or registration number as required by Indiana Code section 9–26–1–1. Further, Farris watched Barton "jogging away" from the scene as Farris "scream[ed]" at him to stay. *Tr.* at 292. To the extent that Barton suggests he did not know that he was involved in the accident, that assertion is a defense that goes to the issue of whether he possessed the requisite mens rea, and the credibility of that defense was an issue for the jury. *See Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007) (it is the fact-

2008 amendments added language concerning entrapment of a person in a vehicle, not applicable to this case, and the 2009 amendments were nonsubstantive.

finder's role, not that of appellate courts, to assess witness credibility). Furthermore, we note, the trier of fact can infer a defendant's knowledge from circumstantial evidence. *Germaine v. State,* 718 N.E.2d 1125, 1132 (Ind.Ct.App.1999), *trans. denied.*

As our colleagues in *Brinkley* explained, "Regardless of whether the Nissan or the truck, following thereafter, dealt the fatal blow to Beaty, or whether it was a combination, Brinkley was clearly involved in the ... accident that led to Beaty's demise." *Brinkley,* slip op. at 9. Likewise, Barton was "clearly involved" in the accident, but failed to comply with the requirements of Indiana Code section 9–26–1–1. Accordingly, the State was not precluded from prosecuting Barton under the failure-to-return-to-the-scene offense merely because Brinkley previously was convicted of it, and the trial court properly denied Barton's motion to dismiss based on collateral estoppel grounds.[4]

## II. *Doyle* Violations

■ Barton takes issue with the prosecutor's following four statements made during the rebuttal portion of the State's closing argument:

(1) I'm suppose [sic] to apologize to a guy who is involved in an accident, by this statute, who sees a white car and has four descriptive features of that white car, who sees that white car run over Jamie Beaty, and he doesn't do a damn thing about it.

. . . .

(2) The first time that anybody has ever heard of that white car with the white hubcaps, the dim lights, and the loud muffler, was in court today. Steven

Brinkley went to trial and was found guilty of two (2) different counts without that information because [Barton] didn't tell anybody.

. . . .

(3) There's another argument that he didn't tell anybody about the white car because—or any other involvement that he might've had because no one asked him.

. . . .

(4) People who are involved in an accident are to remain on the scene so that the police can do a proper investigation. ... but now we hear about the other vehicle, for the first time.

*Tr.* at 919–20, 922, 926, 928–29. Barton asserts that, through these statements, the State committed what is referred to as *Doyle* violations because the State's comments "utilized Barton's post-arrest silence ... for the purpose of impeaching Barton's credibility and Barton's exculpatory explanation at trial. The use of these comments ... was to have the jury draw an inference that Barton fabricated the entire story that he told on the witness stand." *Reply Br.* at 14.

■■ In *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that using a defendant's post-arrest, *post-Miranda* silence to impeach an exculpatory story told for the first time at trial violated the defendant's due process rights.[5] *Doyle* rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial. *Teague v. State,* 891 N.E.2d 1121, 1124

---

4. We commend the trial court on the clarity and thoroughness of its findings and entry denying Barton's motion to dismiss, which greatly aided our appellate review.

5. Our supreme court acknowledged the *Doyle* rule the same year in *Jones v. State,* 265 Ind. 447, 355 N.E.2d 402 (1976).

(Ind.Ct.App.2008) (citing *Wainwright v. Greenfield,* 474 U.S. 284, 291, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986)) (quotations omitted). The key to *Doyle* is that it protects the defendant from being found guilty simply on the basis of a legitimate choice to remain silent. *Trice v. State,* 766 N.E.2d 1180, 1183–84 (Ind.2002). Although evidence of a defendant's post-*Miranda* silence is generally not admissible, the defendant may open the door to its admission. *Morgan v. State,* 755 N.E.2d 1070, 1075 (Ind.2001). Further, a prosecutor's comment on a defendant's pre-arrest, pre-*Miranda* silence is not prohibited. *Teague,* 891 N.E.2d at 1124; *Hilliard v. State,* 609 N.E.2d 1167, 1170 (Ind.Ct.App. 1993).

 Initially, we observe that in order to preserve an issue of alleged prosecutorial misconduct, the party must make a contemporaneous objection. *Id.* at 1169 (by failing to object, defendant waived issue that prosecutor made improper comment in closing rebuttal argument about defendant's silence). When a party alleges that an improper argument was made, he or she should request the trial court to admonish the jury. *Dumas v. State,* 803 N.E.2d 1113, 1117 (Ind.2004). If the party is not satisfied with the admonishment, then he or she should move for mistrial. *Id.* "Failure to request an admonishment or to move for mistrial results in waiver." *Id.*

In this case, although Barton did not contemporaneously object at trial to the State's closing argument comments, he did bring his allegation of prosecutorial misconduct and constitutional violation to the court's attention, out of the jury's presence.[6] During that exchange with the court, Barton presented his arguments, but he did not request an admonishment or a mistrial, and, in fact, expressly stated that he did not desire a mistrial. He further expressed satisfaction with the trial court's proposed instruction intended to cure any error caused by the prosecutor's comments about the exculpatory "white car" evidence being raised for the first time at trial, stating "We're fine, Judge." *Tr.* at 943. Under these circumstances, we find that Barton waived his claim of error.

Even if Barton did not waive the allegation of error, we find that there was no *Doyle* violation. First, the State's rebuttal comments were not necessarily directed solely at the prohibited post-*Miranda* time frame. The evidence presented was that when Barton spoke with the 911 operator from the scene (pre-*Miranda*), he did not mention anything about a white car to the operator. Similarly, when Barton spoke to the police officers who pulled him over, he told them, pre-*Miranda,* that he was at the scene of the accident but left because he thought an EMT told him to leave; he did not mention that he witnessed Beaty get run over or report anything else about seeing a white car. The State's closing comments illustrated that Barton's trial testimony about a white car hitting Beaty was inconsistent with his comments to both the 911 operator and police, where he mentioned nothing about it. *See Trice,* 766 N.E.2d at 1184 (no *Doyle* violation where prosecutor commented that defendant's trial testimony, which described shooting as an accident, was heard "for the first time today" and was inconsistent with her earlier interview with police where,

---

6. Although Barton framed the issue to the trial court as a violation of his rights under the Fifth Amendment to the United States Constitution, a *Doyle* violation is actually a violation of the Fourteenth Amendment's Due Process Clause prohibition against fundamental unfairness, not a violation of the Fifth Amendment privilege against self-incrimination. *Sobolewski v. State,* 889 N.E.2d 849, 856 (Ind.Ct.App.2008), *trans. denied.*

before invoking her right to counsel, she stated that she did not know what happened and could not remember anything about gun).

 Second, a review of the transcript of the parties' closing arguments reveals that the State's rebuttal comments were responsive to Barton's closing argument. A party is not subject to traditional limitations in rebuttal argument if the opposing party makes a comment or an argument that justifies a statement in reply that would otherwise be improper. *Cooper v. State,* 854 N.E.2d 831, 836 (Ind.2006) (State entitled to respond to allegations and inferences raised by defense even if prosecutor's response would otherwise be objectionable where comments are provoked or initiated by defense counsel); *Dumas,* 803 N.E.2d at 1118 (same). Here, Barton's closing argument asserted prosecutorial "abuse of power" for charging his client, noted the "insanity of charging people and ... falsely accus[ing] them," and suggested that even though the State at some point realized it should not have charged Barton, "[n]obody ever wants to say we were wrong, sorry." *Tr.* at 891, 893, 897–98. The State's rebuttal comment which followed, and scoffed at the idea that the State should "apologize" to Barton, was in response to Barton's remarks. *Id.* at 919.

Barton's closing argument also suggested that Barton did not mention to the officers that stopped him anything about what he observed at the scene because the officers were "very irritated," and their first question to Barton was "[H]ave you been drinking?" and not "[H]ey, what happened at that accident scene?" *Id.* at 896. Barton's counsel explained that the reason Barton did not offer more information about what he observed at the scene was because "nobody ever asked him. They weren't interested." *Id.* at 897. The

State's rebuttal comments that Barton "didn't tell anybody about the white car because ... no one asked him" were rephrasing Barton's "nobody asked for his help" explanation and explaining that the statute does not require anyone to ask for a party's help before the duties to report are triggered. The State's other comment that "People who are involved in an accident are to remain on the scene so police can do a proper investigation ... but now we hear about the other vehicle for the first time" similarly relates to the elements of the offense because, although Barton telephoned 911, he did not provide critical information and thereby did not fulfill his statutory obligation. Read in isolation, the prosecutor's comments mentioning Barton's "white car" exculpatory testimony could raise *Doyle* concerns; however, when read in context and considering the record before us in its entirety, we find that the comments do not rise to the level of *Doyle* violations.

 That said, even if the State's comments were deemed to constitute *Doyle* violations, the comments would have to constitute fundamental error to overcome our waiver determination above. *Trice,* 766 N.E.2d at 1182. Fundamental error occurs only when the error constitutes " 'a substantial, blatant violation of basic principles of due process rendering the trial unfair to the defendant.' " *Id.* (quoting *Carter v. State,* 754 N.E.2d 877, 881 (Ind.2001), *cert. denied,* 537 U.S. 831, 123 S.Ct. 135, 154 L.Ed.2d 47 (2002)). To determine whether a *Doyle* violation denied a defendant a fair trial, we must examine five factors: (1) the use to which the prosecution puts the post-*Miranda* silence; (2) who elected to pursue the line of questioning; (3) the quantum of other evidence indicative of guilt; (4) the intensity and frequency of the reference; and (5) the availability to the trial court judge of

an opportunity to grant a motion for mistrial or to give curative instructions. *Robinette v. State*, 741 N.E.2d 1162, 1165 (Ind.2001); *Johnson v. State*, 901 N.E.2d 1168, 1173 (Ind.Ct.App.2009).

Assuming there was a *Doyle* violation, for the sake of analysis, we conclude that any such violation did not amount to fundamental error. With regard to the prosecution's use of post-*Miranda* silence, we already determined that the State's comments focused on Barton's pre-*Miranda* failure to mention or disclose the white car to police or the 911 operator. As to the quantum of evidence indicative of guilt (on the matter of Barton's failure to stop or remain at the scene of the accident), the State presented evidence that Barton did not remain at the scene. Farris saw Barton "booking it" to his truck, as Farris was yelling at Barton to remain at the scene. *Tr.* at 274. When officers stopped him shortly thereafter, they observed moist tissue on Barton's truck, from front to back, along the passenger side. Several samples of the tissue were tested for DNA analysis and found to be "consistent with [Beaty's] DNA profile." *Id.* at 662–64. Although Barton called 911, he did not provide his name, address, or registration number as required by the statute. As to the intensity and frequency of the contested white car references, the State mentioned the white car exculpatory testimony on four occasions; however, viewing the rebuttal in total, those four references did not comprise the entirety or a substantial part of the State's rebuttal. Finally, concerning the trial court's opportunity to give a curative instruction or grant a mistrial, we have already stated that Barton was given the opportunity but did not expressly move for a mistrial or admonishment. Indeed, Barton's counsel clearly and articulately

expressed concerns over the State's comments, and why he believed they were inappropriate and rose to the level of constitutional error; however, he also endorsed the trial court's proposed curative instruction and explicitly declined moving for a mistrial. Therefore, even assuming the existence of a *Doyle* violation, the State's comments did not constitute fundamental error.

### III. Mistake of Fact Instruction

Barton argues that the trial court erred when it refused his proposed final jury instruction Number 3, a mistake-of-fact instruction. The manner of instructing a jury lies largely within the sound discretion of the trial court, and we review only for an abuse of that discretion. *Stringer v. State*, 853 N.E.2d 543, 548 (Ind. Ct.App.2006). In determining whether a trial court properly refused an instruction, we consider the following: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. *Id.*

Barton claims that he did not knowingly violate the failure-to-stop statute; that is, if he did violate it, he did so under a mistake of fact. During trial, his counsel proposed the following jury instruction on the defense of mistake of fact:

> It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense. I.C. § 35-41-3-7.

*Appellant's App.* at 35. The trial court refused the instruction, over Barton's objection.[7]

7. We observe that while Barton did not expressly object to the trial court's refusal to

give the proposed instruction, he did state

Barton identifies two separate mistakes of fact that "negated the culpability required for commission of the offense" and entitled him to the defense and proposed instruction. *Appellant's App.* at 27. First, he claimed that because he used his City of Muncie cell phone (provided to him as the Transportation Director of MITS) to call 911, he believed that, automatically, he would be identified as the caller, and therefore he did not need to provide his name, address, and registration number as required by the failure-to-stop statute. Ind.Code § 9–26–1–1. He urges, "A review of the popular CSI shows demonstrate the reasonableness and honesty of Barton's mistake concerning his 911 call." *Id.* at 28. Second, he believed that he did not hit Beaty, but rather that he went around her; if he did hit her, it was unknowingly with the tow hitch of his pick-up truck.

As the State explains in its brief, for mistake of fact to be a valid defense, three elements must be satisfied: (1) the mistake must be honest and reasonable; (2) the mistake must be about a matter of fact; and (3) the mistake must negate the culpability required to commit the crime. *Nolan v. State,* 863 N.E.2d 398, 404 (Ind.Ct.App.2007), *trans. denied.* With regard to the first element, " 'Honesty is a subjective test dealing with what appellant actually believed. Reasonableness is an objective test inquiring what a reasonable man situated in similar circumstances would do. To require the giving of appellant's instruction we must find some evidence of both.' " *Id.* (quoting *Davis v. State,* 265 Ind. 476, 355 N.E.2d 836, 839 (1976)). The State maintains that, given that "the entire passenger half of [Barton's] vehicle had fleshy tissue along it," Barton's alleged mistake of fact about striking Beaty was not reasonable. *Appel-*

*lee's Br.* at 31. The State likewise maintains that while it might be reasonable for Barton to have believed that by using his City of Muncie cell phone he was thereby providing law enforcement with his name, it was "unreasonable to believe, however many episodes of CSI one has viewed, that one's cell phone will automatically provide the 911 dispatch with [his address and registration number]." *Id.* Accordingly, the State asserts that Barton's mistakes of fact were not reasonable, and therefore, the mistake of fact instruction was not warranted. We are inclined to agree; however, we need not decide the reasonableness of his alleged mistakes of fact because the trial court properly determined that the substance of Barton's proposed Instruction Number 3 was adequately covered by other instructions. *Tr.* at 865.

Specifically, the trial court instructed the jury that to convict Barton the State was required to prove every element beyond a reasonable doubt. Thereafter, the trial court instructed the jury on the elements of the failure-to-stop statute, including that a driver "who knows that he or she was involved in an accident which resulted in injury to a person" is required to comply with the statute's outlined duties. *Id.* at 869. The trial court instructed that, to convict Barton of the offense, the State was required to prove beyond a reasonable doubt that Barton "knew or should have known that he had been in an accident." *Id.* at 870. The court further instructed the jury that "a person engages in conduct knowingly when aware of the high probability that he is doing so." *Id.* at 871–72. Considering the instructions in their entirety, the trial court did not abuse its discretion when it refused Barton's pro-

that he was "not going to withdraw the in-

struction." *Tr.* at 865.

posed Instruction Number 3 on the mistake of fact defense.

Affirmed.

RILEY, J., and BAILEY, J., concur.