## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 08 2019, 6:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean C. Mullins
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Randol Thomas Palmer-Hall,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

November 8, 2019

Court of Appeals Case No.
19A-CR-923

Appeal from the Lake Superior Court

The Honorable Salvador Vasquez, Judge

Trial Court Cause No.
45G01-1806-F5-51

**Brown, Judge.**

[1] Randol Thomas Palmer-Hall appeals his convictions for disarming a law enforcement officer as a level 5 felony, battery against a public safety official as a level 6 felony, and resisting law enforcement as a class A misdemeanor. He raises two issues:

    I.    Whether the trial court abused its discretion by rejecting his proposed instruction regarding mistake of fact; and

    II.    Whether the evidence is sufficient to sustain his conviction for disarming a law enforcement officer.

We affirm.

### Facts and Procedural History

[2] On June 1, 2018, Palmer-Hall attempted to grab T.W. and "ended up grabbing the corner of [her] collar and [her] earbuds" and the first three buttons of her jacket broke off. Transcript Volume III at 111. On the same day, Officer Daniel Sangkaratana of the Hammond Police Department was patrolling the Hessville area in a fully-marked police vehicle with overhead lights and "Hammond Police" on the sides. While he patrolled, he wore his department-issued uniform which had a Hammond police patch and two marks of rank on the left sleeve, and his duty belt which had three magazines, a flashlight, a radio, a taser on the left side, and a firearm on the right side. At some point, Officer Sangkaratana received a dispatch regarding a black male subject in an SUV that had approached and tried to grab and pull a woman into a vehicle, as well as a description of the license plate of the SUV. As he drove through the area, he passed a vehicle matching the description and verified that the license plate

matched the description given in the dispatch. He turned around, pulled up behind the SUV, and exited his vehicle with the emergency lights on.

[3] Palmer-Hall exited the SUV from the driver's seat, and Officer Sangkaratana instructed him to enter the vehicle and yelled repeatedly to "Get back in the vehicle, sir." *Id.* at 195. Officer Sangkaratana approached Palmer-Hall, Palmer-Hall turned toward the SUV, opened the door, and reached toward the floorboard, and Officer Sangkaratana said "no," grabbed him, and "immediately went for th[e] hand that was reaching the floorboard." *Id.* at 197. A struggle ensued, and bystander Patrick Baum, who had exited his vehicle upon seeing the struggle, intervened and assisted Officer Sangkaratana in the takedown of Palmer-Hall.

[4] On June 2, 2018, the State charged Palmer-Hall with disarming a law enforcement officer as a level 5 felony, attempted criminal confinement as a level 6 felony, battery against a public safety official as a level 6 felony, resisting law enforcement as a class A misdemeanor, and battery as a class B misdemeanor, and later amended the information to add charges for attempted kidnapping as both level 5 and level 6 felonies.

[5] At the jury trial, Palmer-Hall mentioned that his mistake of fact instruction was not included in the preliminary jury instructions, and the court responded it had reviewed the preliminary instruction and thought it better "to see how the evidence comes out" and indicated that Palmer-Hall would be able, "given the evidence presented," to make the argument that the "mistake of fact instruction

would be an appropriate instruction as a final." Transcript Volume II at 45-46. Palmer-Hall indicated that it was pled as an affirmative defense, and the court stated that it denied that request.

[6] Officer Sangkaratana testified he had a Glock-brand firearm while he was patrolling on June 1, 2018, which was loaded and did not have an external safety device that would place it in a non-firing position, and that a bullet would have been expelled if the trigger of the firearm had been pulled. He testified that he thought that Palmer-Hall was reaching for a weapon when he reached for the floorboard, and the following exchange occurred when he was asked if he recalled Palmer-Hall saying anything during their physical contact:

> A. At one point he turns towards me and asks me, "Are you the police?"
>
> Q. Okay. And what happens after he says, "Are you the police?"
>
> A. At that point, everything started flying – he's grabbing at everything on me. The body camera was ripped off. The shoulder mic was ripped off and dangling from my knee. I couldn't even reach it to radio that I had somebody that was fighting with me.
>
> Q. And take me through your positioning, when you first initiate contact with the driver of the SUV.
>
> A. Initially, when I first made contact, he was facing the car and I was behind him when I went to go grab his hand and pull it out. During the struggle, he rolled and turned into me so that we were facing each other. And at that point everything – I had leverage because I had the door that was open and he was pinned

between the car and the door and me. And he eventually overpowered me and got me into the street.

Q. And as he's overpowering you what are his hands doing?

A. Everything – like I said, the – the body mic had flown off. The shoulder mic, I couldn't radio. When everything – when he was grabbing at everything, at that point my job is to create distance because I know have a firearm on my – on my hip and I don't want him to go for that. So I created my distance. It came into the street, trying to control him as best as I could.

Q. And when, if ever, did he grab at your firearm?

A. Probably in the street. I can't tell you exactly at which point. I just know I felt the belt twist and everything coming off.

Transcript Volume III at 197-199. He described that his firearm has a thumb switch, that "you have to press the thumb lever and it releases the firearm," and that, if you do not press the lever, "it won't come out." *Id.* at 199. When asked where any vertical force being applied to the firearm without the thumb lever being pressed would be transferred, he answered: "Into my belt. My belt will twist." *Id.*

[7] The court admitted and played for the jury audio and video recordings from June 1, 2018, from Officer Sangkaratana's body camera and his police vehicle's dash camera, as State's Exhibits 8 and 9, respectively. In both exhibits, Officer Sangkaratana can be heard stating "Get back in your vehicle" and "Sir, I'm not going to tell you again" while a male, identified through questioning as Palmer-Hall, can be seen exiting and closing the driver's door of an SUV. State's Exhibit 8 at 0:35-0:43; State's Exhibit 9 at 0:35-0:43. The video footage and

audio of the body camera, which was positioned above Officer Sangkaratana's waist, show him shut the police vehicle's door and rapidly approach Palmer-Hall, who is reaching under the seat with his right hand after having re-opened the closed SUV driver's door with his left hand. State's Exhibit 8 at 0:42-0:47. As Officer Sangkaratana engages Palmer-Hall in the doorway of the SUV driver's side, the body camera is positioned such that Palmer-Hall's right arm is outside of the camera frame, and at some point Palmer-Hall can be heard asking, "Man, what the f--k?" and "Are you the Police?" before the body camera's video footage becomes obscured. *See id.* at 0:48-1:00.

[8] The footage from the police vehicle's dash camera shows Officer Sangkaratana reach for Palmer-Hall's right arm and engage him physically, resulting in a struggle between them that originates in the SUV's driver's side doorway and lasts for approximately thirty seconds. As the men struggle in the doorway, Palmer-Hall's right arm moves downward at some point from its shoulder-level position and becomes obstructed from view. The dash camera's video footage further shows a black pickup truck park alongside both the police vehicle and SUV, the struggle migrate from the SUV's driver's side doorway to the middle of the street and continue obstructed at waist-level by the truck's front, and a third person eventually approach the pair from beyond the camera frame and assist in wrestling Palmer-Hall to the ground.

[9] The prosecutor asked Officer Sangkaratana to describe precisely how Palmer-Hall reached for his gun, and he responded: "During the struggle, as everything was getting knocked off me, I felt my belt twist and that tells me he was going

for the – my gun or a weapon – either that or my taser, one of the two." Transcript Volume III at 208. When asked to point to exactly where that happened in the two videos, he stated "I can't tell from watching the vehicle. There's a spot where Mr. Baum's vehicle is blocking." *Id.* During cross-examination, he indicated he felt his belt twist and that, "[a]s far as when he – when exactly during all that, that happened so quickly. You want me to pick a snippet, you'd have to ask Mr. Baum." *Id.* at 220. He stated that he felt his belt twist, Palmer-Hill's counsel asked "that could have been anywhere on the belt," and he answered "[p]ossibly." *Id.* at 220-221. He agreed in response to Palmer-Hill's counsel's statement that "You're still struggling. Still struggling. At this point, would you agree you're belly to belly, chest to chest." *Id.* at 221. When asked if, when "you guys are behind the bumper" was when Palmer-Hall reached for the firearm, Officer Sangkaratana stated "I also see his arm go up right there at the very end and me grab it as he grabs for my waist where my taser site was and then me put it back down." *Id.* at 226. He also indicated that "I see his arm go up, right towards that area of my hip. And I see like me grab his arm, pull it away and put it back down." *Id.*

[10] Baum testified that he was driving as shown in the police vehicle dash camera footage when he stopped and saw an officer "really struggl[e] with somebody." Transcript Volume IV at 2. Baum stated "the man appeared to be overpowering the officer" and "[h]e was getting the better of him." *Id.* at 4. When asked why he intervened, he answered "To me, it looked like he was trying to go after the officer's gun." *Id.* During cross-examination, when asked

about becoming involved, Baum stated: "His hands, they were kind of like – they were wrestling around" and "I mean, it happened quick." *Id.* at 8. He stated that he would agree with the statement "In the video we just watched, prior to you moving forward to help, you did not see [Palmer-Hall] reach for a gun." *Id.* at 10.

[11] Defendant's proposed instruction titled "Mistake of Fact" states:

> It is an issue whether the Defendant mistakenly committed the acts charged. It is a defense that the Defendant was reasonably mistaken about a matter of fact if the mistake prevented the Defendant from intentionally, knowingly, or recklessly committing the acts charged or, committing the acts charged with the specific intent of committing battery on a government official. The State has the burden of proving beyond a reasonable doubt that the Defendant was not reasonably mistaken.

Appellant's Appendix Volume II at 150. The court declined to give the instruction, stating in part:

> as evidenced by this videotape and they were face-to-face, there was – as I saw it – there was no question at all that who he was struggling with was, in fact, a police officer. I don't see any mistake of fact in any regard that's reasonable and honest . . .

Transcript Volume IV at 72.

[12] The jury found Palmer-Hall guilty of disarming a law enforcement officer as a level 5 felony, battery against a public safety official as a level 6 felony, resisting law enforcement as a class A misdemeanor, and battery as a class B

misdemeanor and not guilty of the offenses in the remaining counts. The court sentenced him to three years on the level 5 felony, one and one-half years on the level 6 felony, one year on the class A misdemeanor, and six months on the class B misdemeanor to be served concurrently.

## *Discussion*

### I.

[13] The first issue is whether the trial court abused its discretion by rejecting the proposed instruction regarding mistake of fact. Generally, the purpose of an instruction is "to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Overstreet v. State*, 783 N.E.2d 1140, 1163 (Ind. 2003), *cert. denied*, 540 U.S. 1150, 124 S. Ct. 1145 (2004). Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion. *Id.* at 1163-1164. A trial court erroneously refuses to give a tendered instruction, or part of one, if: (1) the instruction correctly sets out the law; (2) evidence supports the giving of the instruction; and (3) the substance of the tendered instruction is not covered by the other instructions given. *See id.* at 1164. Before a defendant is entitled to a reversal, he must affirmatively show that the erroneous instruction prejudiced his substantial rights. *Lee v. State*, 964 N.E.2d 859, 862 (Ind. Ct. App. 2012) (citing *Gantt v. State*, 825 N.E.2d 874, 877 (Ind. Ct. App. 2005)), *trans. denied*. An error is to be disregarded as harmless unless it affects the substantial rights of a party. *Id.* (citing *Oatts v. State*, 899 N.E.2d 714, 727 (Ind. Ct. App. 2009); Ind. Trial Rule 61).

[14]    A defendant is entitled to an instruction on any defense which has some foundation in the evidence. *Huls v. State*, 971 N.E.2d 739, 746 (Ind. Ct. App. 2012) (citing *Potter v. State*, 684 N.E.2d 1127, 1135 (Ind. 1997)), *trans. denied*. Ind. Code § 35-41-3-7 provides that "[i]t is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense." For mistake of fact to be a valid defense, three elements must be satisfied: (1) the mistake must be honest and reasonable; (2) the mistake must be about a matter of fact; and (3) the mistake must negate the culpability required to commit the crime. *Barton v. State*, 936 N.E.2d 842, 854 (Ind. Ct. App. 2010), *trans. denied*. "With regard to the first element, 'Honesty is a subjective test dealing with what appellant actually believed. Reasonableness is an objective test inquiring what a reasonable man situated in similar circumstances would do.'" *Id.* (quoting *Nolan v. State*, 863 N.E.2d 398, 404 (Ind. Ct. App. 2007), *trans. denied*).

[15]    "When the State has made a prima facie case of guilt, the burden is on the defendant to establish an evidentiary predicate of his mistaken belief of fact." *Chavers v. State*, 991 N.E.2d 148, 151 (Ind. Ct. App. 2013), *trans. denied*. Upon invoking mistake of fact as a defense, the burden shifts to the defendant to satisfy the three elements. *See id.* (quoting *Potter v. State*, 684 N.E.2d at 1135). In determining whether the evidence required an instruction upon a defense of mistake of fact, we consider whether the evidence relevant to it, if believed, could have created a reasonable doubt in the jury's mind that the accused had

acted with the requisite mental state. *Huls v. State*, 971 N.E.2d 739 (citing *Stoner v. State*, 442 N.E.2d 983, 985 (Ind. 1982)).

[16] Palmer-Hall's argument concerns only the first element of the mistake of fact defense. He contends: the court failed to make a finding on the first consideration of honesty by explicitly refusing to consider his thought process and subjective belief; he was in an "unwell state" and his initial conduct and statements demonstrate that he did not view Officer Sangkaratana as an authority figure prior to when the officer made physical contact; and that he was "unable to correct his mistaken belief that the person he was engaged with was anyone but a normal citizen." Appellant's Brief at 18. He further argues that the court, in citing to the video exhibits, "assess[ed] reasonableness from a third-party point of view rather than from the point of view of a similarly situated individual" and that his difficulty in identifying Officer Sangkaratana was reasonable under the circumstances. *Id.* at 10.

[17] The State maintains that no evidence was presented about what Palmer-Hall believed during his altercation with Officer Sangkaratana and, therefore, there is no way to analyze the veracity of his subjective belief. It argues that no reasonable person assumes a civilian would wear a full police uniform and drive a fully marked police cruiser with the emergency lights activated, that no evidence was presented indicating that Palmer-Hall could not see the officer's uniform or that he panicked once Officer Sangkaratana attempted to restrain him, and that Palmer-Hall had ample time and ability after the outset of the interaction to deduce he was struggling with a police officer and cease resisting.

[18] Palmer-Hall does not direct us to evidence that would create a reasonable doubt in the jury's mind as to the culpability required to find him guilty of battery against a public safety official as a level 6 felony under Ind. Code § 35-42-2-1[1] and resisting law enforcement as a class A misdemeanor under Ind. Code § 35-44.1-3-1(a)(1).[2] With respect to the charge of disarming a law enforcement officer, he does not point to any authority that requires the trial court to make explicit findings as to every element related to the mistake of fact defense after having found that a defendant's mistake of fact was unreasonable. We further note that the final jury instructions defined the appropriate *mens rea* requirements and addressed intoxication.[3] In light of the testimony and audio and video footage of the struggle from both Officer Sangkaratana's body camera and the dash camera of his police vehicle, we cannot say that the evidence supported the proposed instruction on mistake of fact or that the trial court abused its discretion in declining to give the proposed instruction.

II.

---

[1] Ind. Code § 35-42-2-1(c)(1) provides that a person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, and Ind. Code § 35-42-2-1(e)(2) provides that that offense is a level 6 felony if it is committed against a public safety official while the official is engaged in the official's official duty.

[2] Ind. Code § 35-44.1-3-1(a)(1) provides that a person who knowingly or intentionally forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties commits resisting law enforcement, a class A misdemeanor.

[3] We also note that Ind. Code § 35-41-2-5 provides that intoxication is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense unless the defendant meets the requirements of Ind. Code § 35-41-3-5, which Palmer-Hall does not assert.

[19] The next issue is whether the evidence is sufficient to sustain Palmer-Hall's conviction for disarming a law enforcement officer. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if there exists evidence of probative value from which a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

[20] Ind. Code § 35-44.1-3-2(b) provides that a person who "knows that another person is an officer; and . . . knowingly or intentionally takes or attempts to take a firearm (as defined in IC 35-47-1-5) or weapon that the officer is authorized to carry from the officer or from the immediate proximity of the officer . . . without the consent of the officer; and . . . while the officer is engaged in the performance of the officer's official duties" commits disarming a law enforcement officer, a Level 5 felony.

[21] Palmer-Hall argues that no reasonable jury could find him guilty of attempting to disarm the officer beyond a reasonable doubt. He contends that Officer Sangkaratana's testimony amounts to "nothing more than a mere inference or supposition" that he attempted to disarm the officer, the video exhibits demonstrate that he is situated in such a manner as to have no means of reaching towards the firearm, and Baum's testimony "openly acknowledg[es] doubt as to whether Palmer-Hall attempted to disarm" the officer . Appellant's Brief at 4, 14. In his reply brief, he asserts that the State does not argue that the

video evidence showed an attempt to disarm Officer Sangkaratana but instead that it demonstrated Palmer-Hall had an opportunity to do so, and that this reliance by the State "seemingly seek[s] to place the burden on Palmer-Hall to prove his own innocence." Appellant's Reply Brief at 4.

[22] The State responds that Palmer-Hall's argument to "have the evidence examined piece-meal instead of taken as a whole" is simply an invitation to reweigh evidence. Appellee's Brief at 13. It argues it is only required to show Palmer-Hall attempted to take a firearm or weapon from the officer, which the evidence most favorable to the verdict demonstrates. It contends that, with Palmer-Hall grabbing and tearing other equipment off the officer's uniform, a reasonable jury could have found the reason Officer Sangkaratana "felt [his] belt twist and everything [come] off" was because Palmer-Hall attempted to grab either the firearm or taser attached to his belt. *Id.* at 11.

[23] The record reveals that Officer Sangkaratana, in describing how Palmer-Hall reached for his gun, explained: "During the struggle, as everything was getting knocked off me, I felt my belt twist and that tells me he was going for the – my gun or a weapon – either that or my taser, one of the two." Transcript Volume III at 208. Baum indicated that it "looked like he was trying to go after the officer's gun." Transcript Volume IV at 4. Based upon our review of the other testimony and evidence as set out above and in the record, including footage of the approximately thirty-second struggle, we conclude that the State presented evidence of a probative nature from which a trier of fact could find beyond a

reasonable doubt that Palmer-Hall committed the offense of disarming a law enforcement officer.

[24] For the foregoing reasons, we affirm Palmer-Hall's convictions.

[25] Affirmed.

Altice, J., and Tavitas, J., concur.