## RUNYON *v.* STATE OF INDIANA

[No. 27,596.   Filed December 29, 1941.   Rehearing denied
January 16, 1942.]

*James A. Collins, Frank A. Symmes, Charles W. Symmes,* and *Wray E. Fleming,* all of Indianapolis, for appellant.

*George N. Beamer,* Attorney General, and *Walter O. Lewis,* Deputy Attorney General, for the State.

RICHMAN, J.—Appellant, waiving a jury, was convicted of violating § 2 of ch. 190, Acts 1929, which provided that the driver of a motor vehicle involved in an accident causing death, personal injury or property damage "shall immediately stop, render or offer to render assistance, and give to the injured person or some person who is with such injured person or to the owner or person in charge and control of the damaged property, his name, residence address including street number, city or town, county and state, also the license number of said motor vehicle . . . and produce or offer for inspection, the certificate of registration therefor: *Provided,* That if such person is either killed or rendered unconscious and there is no other person to whom such person involved in the accident can report, then such person shall report such information to a police or peace officer, or in case no police or peace officer is in the vicinity of the place of such injury or accident to the nearest police station, peace officer or judicial officer."

The indictment closely follows the language of the statute and negatives compliance with every duty enjoined thereby. It alleges that two persons, Noah Russell and Margaret Russell, were killed in the accident and that appellant failed to stop and give to them the assistance and information required, "nor to any person" with them, nor to any other of the several officers mentioned in the proviso.

The overruling of motions to quash and in arrest of judgment, assigned as error, test the sufficiency of the indictment. The specific objections all go to the lack of certainty which is properly raised by the motion to quash.

Appellant asserts that the indictment charges three offenses and is therefore bad for duplicity. We are of

the opinion that failure to stop, failure to render assistance and failure to give the information as to appellant's identity are parts of but one offense for which there can be but one punishment. Similar statutes have been so construed in *People* v. *Huber* (1923), 64 Cal. App. 352, 354, 221 P. 695, 696; *State* v. *Razey* (1929), 129 Kan. 328, 282 P. 755, 66 A. L. R. 1225, and *Commonwealth* v. *Zeitler* (1922), 79 Pa. Sup. 81.

Appellant makes the point that the word "immediately" contained in the statute is omitted from the indictment. It charges however that she "did then and there unlawfully and feloniously fail to stop" which was sufficient. The theory of the indictment is that she failed to stop at all which includes the charge that she failed immediately to stop.

A more substantial objection is that the indictment does not give the name of the person referred to in the phrase "nor to any person with the said Noah Russell and Margaret Russell." Only by implication from this phrase does the indictment disclose that anyone was with the two persons killed. The evidence shows, however, that Noah was the father of Margaret, whom he was carrying, and that his wife, carrying another small child, was walking with him when he was killed. Appellant insists that the wife's name should have been stated in the indictment so that it might be known with certainty to whom the aid and information should have been given.

In support of this position appellant relies upon *Gardner* v. *State* (1853), 4 Ind. 632; *McLaughlin* v. *State* (1873), 45 Ind. 338; *Zook* v. *State* (1874), 47 Ind. 463; *Burton* v. *State* (1881), 75 Ind. 477, and *Walters* v. *State* (1910), 174 Ind. 545, 92 N. E. 537. The Gardner case held only that under the law in force prior to

the adoption of the Code in 1852 it was not proper to describe a defendant by his initials only but that his christian name must be stated. The Burton case on similar facts is rested on this case.

In the Zook case prosecution was under a statute making it an offense for the proprietor of a poolroom to permit a minor to play at any of the tables. The court held the indictment insufficient because it did not show that a game was played and also because it did "not name the person with whom the minor played, and a conviction on this indictment would not be a bar to another indictment charging that the minor played with a person named." We do not think this reasoning applies to the case at bar. If appellant had stopped and given the required information to any person who was with the person killed, she would not have been liable to a second prosecution. There might well be two or more offenses committed on the same day in the same poolroom under the gaming statute but under the "hit and run" statute only one offense is involved in any one accident. Conviction of that one offense would bar any further prosecution. The statutes involved in the McLaughlin case, *supra*, forbade sales of liquor to certain classes of purchasers. The indictment charged "generally that the defendant sold liquor to divers persons" but named no person. Every sale, of course, constituted a separate offense and it is apparent that the defendant would have no knowledge of the identity of the specific offense unless the person to whom the sale was made was named in the indictment and therefore could not properly prepare his defense. For this very good reason the indictment was subject to motion to quash. The Walters case, *supra,* recognized this rule as applicable to a later liquor statute but refused to hold that "W. E. Clark," given as the name of the pur-

chaser, was insufficient because only the initials were used.

In this case the name of the person with Noah Russell was of secondary importance. Appellant had completely within her own knowledge a defense or ■ lack of defense to the indictment which charged that she gave no information to any one within the purview of the statute. The indictment negatived any attempt at compliance with the law, not an insufficient compliance. If the evidence should show that a defendant stopped, rendered aid, and gave the required information to some one who apparently had been with persons who were killed in an automobile collision it is inconceivable that a court or jury would be so technically minded as to convict because the information was given to a person who in fact had not been with them but arrived after the accident. The purpose of the statute is to provide prompt aid for persons who are injured or whose property is damaged and to sufficiently establish the identity of the parties so that they and police authorities may know with whom to deal in matters growing out of the accident. A defense that shows reasonable compliance with these requirements can be made without knowledge of the name of the person or persons who were with those incapacitated by the collision. It would seem indeed that any such reasonable compliance would result in the defendant's procuring the name of the person to whom the information should be given. In this case, where the sole defense is that appellant was not involved in the collision, we find it difficult to separate the theoretical from the practical or, in other words, to treat the motion to quash as presenting an abstract legal proposition upon the decision of which a defendant may

predicate an error which could not possibly have been harmful.

Appellant further insists that the use of disjunctives makes the indictment uncertain. The language referred to reads:

> "and, did then and there unlawfully and feloniously fail to give to the said Noah Russell and Margaret Russell, nor to any person with the said Noah Russell and Margaret Russell, nor to a police officer, nor to a peace officer, nor to the nearest police station, nor to the nearest peace officer, nor to the nearest judicial officer, her, the said Mary Runyon's name, residence address and license number of said automobile, neither did she then and there produce nor offer for inspection the certificate of registration for said automobile."

We think the wording is awkward and ungrammatical but that the meaning is clear, namely, that appellant did not give to any of the persons mentioned in the statute the information required to be given.

Perhaps the State might have obviated the necessity of bringing numerous police and peace officers to testify of appellant's failure to report to them, if the indictment had been so worded as to show that Mrs. Russell was with her husband when he was killed and was not given the information required of appellant. But it was not drawn on that theory. As against every objection urged the indictment was sufficient. *Kennedy* v. *State* (1936), 209 Ind. 287, 196 N. E. 316; *Foust* v. *State* (1928), 200 Ind. 76, 161 N. E. 371.

By three separate specifications in her motion for a new trial appellant presents substantially one question, the sufficiency of the evidence to sustain the finding. She did not testify. Her connection with the accident rests on circumstantial evidence corroborated by her own extra-judicial statement.

On a rainy Saturday evening in December shortly after six o'clock Mr. and Mrs. Russell, each carrying a child, were walking west on the north side of the National Road close to a bridge in Bridgeport near the town's west limits. A car following them struck Mr. Russell. In a car approaching from the west were three men, one of whom testified that he saw a car coming from the east and that near the bridge it swerved to the left and its right head lamp went out. The driver thereof did not stop and the car disappeared west of Bridgeport. The three men heard a woman screaming, their car was stopped, turned around and its headlights trained on the scene of the accident. The body of Russell was lying on the highway. The child he had been carrying was picked up by one of the men and died before he could reach a doctor's office in Bridgeport. A crowd gathered and traffic was flagged down with a flashlight. Soon thereafter a Chevrolet car appeared from the west with right headlight and windshield broken. When attempt to halt it was made, the driver speeded east. At a filling station about two blocks east of the scene a Chevrolet car of such description turned around and went back west. As it turned a piece of glass fell or was thrown therefrom. The crowd remained for an hour or more at the scene of the accident. Three deputy sheriffs arrived from Indianapolis about 6:36 p. m. and remained in Bridgeport for two hours until they completed their investigation. To one of them was given the piece of glass. A witness who was in front of a store in Bridgeport about five hundred feet from the place of impact heard the "thumping sound" when the car struck Russell and saw it swerve immediately thereafter. No one that night stopped, admitted his or her identity as the driver of the car which hit Russell, or gave any of the information

required by the statute to any person at the scene of the accident.

Appellant's written statement made two days later was admitted in evidence without objection, as follows:

"My name is Mary Runyon. I am 37 years old and I live with my mother at Plainfield, Indiana. On Saturday, December 4th, I left Indianapolis at about 5:50 p. m. to drive to my home at Plainfield. When I arrived at the west side of Bridgeport something hit the windshield of my car and broke it. I then drove to the County line road and turned around and drove back and looked to see what had hit my car but I could not see anything. I did not get out of my car but I looked as good as I could but did not see anything. I then drove to the closest place where I could turn around and then I drove back over the road again. I then could not see anything. I then drove on home to Plainfield and put my car in my garage. I then saw that the right headlight and the right fender were broken. Sunday morning I looked at the car and then I saw there was a dent on the right side of the hood of my car. I had told my mother and my sister-in-law and my aunt who also live with my mother that something had hit my car on the National Road. Sunday, when I saw the Sunday paper, I said to my mother that I must have hit something from that wreck that flew up and hit my car and broke the windshield. On Monday, December 6th, I went to Raymond Calbert's garage and I told him about my accident and that I wanted him to fix my car. He said that he would as soon as possible. I came to Indianapolis on the 10:23 a. m. interurban car and did some shopping. When I arrived home this evening, Monday, December 6th, I read in the paper about the accident. Then I thought that maybe it might have been my car so I then called Dr. Thatcher, deputy coroner of Marion County, and told him about my accident and he told me to come to the sheriff's office at the County jail which I did. I did not drive through any filling station or stop at any filling station but I might have turned around by the side of a station at the road I turned around at at Bridgeport. I

was driving about 35 miles per hour when the object hit my car. I left the State Board of Health office where I work at about 11:00 a. m., December 4th, and I was in the different stores Christmas shopping until evening when I started home. I did not throw any glass or anything else out of my car at Bridgeport."

Photographs of appellant's car are in the record. They show the right front fender bent inward with several transverse dents in the front portion, the glass of the right headlight broken and the frame thereof bent backward and inward, a large uneven dent in the right portion of the hood with corresponding dent in that portion of the cowl that is covered by the hood, a jagged hole shaped like an hour glass in the right side of the windshield with at least one-fourth of the windshield glass missing and around the edges of the hole cracks in the "shatter-proof" glass. There was testimony that the piece of glass which was picked up at the filling station fitted into that part of the hole in the windshield nearest to the wheel of the car. This and other corroboratory evidence amply justified the trial court's conclusion that appellant's car was involved in this accident. Little is said in the briefs to the contrary.

But appellant insists that the State did not show that she had knowledge that she had been involved in an accident. It is inconceivable that the driver of a car which hit a man so hard that the impact of the blow was heard four or five hundred feet and which was so badly damaged as the testimony and photographs disclosed, should not know that there had been a serious accident. Her statement also is incredible that she drove back past the scene into Bridgeport and then west the second time without becoming aware of the crowd, the dead body of Russell, the screams of his wife and the other unusual conditions that would indi-

cate to any passing driver that an accident had occurred. Even if there were two possible inferences from the evidence, one consistent with her lack of knowledge, nevertheless the trial court could draw the inference of knowledge and we upon appeal cannot say that he should have drawn the other inference. *White* v. *State ante* p. 290, 37 N. E. (2d) 937.

There is sufficient evidence in the record to establish every element of the offense, that appellant's car struck Russell, that she then knew thereof, that she did not stop nor aid nor offer to aid the victims, nor disclose to any one that night any of the information required by the statute.

Judgment affirmed.

NOTE.—Reported in 38 N. E. (2d) 235.