# FOR PUBLICATION



FILED
Nov 17 2014, 6:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JAMES H. VOYLES JR.**
**JENNIFER M. LUKEMEYER**
VOYLES ZAHN & PAUL
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

GREGORY HUDSON, )
)
    Appellant-Defendant, )
)
        vs. ) No. 49A05-1404-CR-162
)
STATE OF INDIANA, )
)
    Appellee-Plaintiff. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-1301-FC-004144

**November 17, 2014**

**OPINION – FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Gregory Hudson struck and killed Kathleen Clark with his pickup truck. Hudson did not stop at the scene of the accident, nor did he contact authorities. After police received an anonymous tip that Hudson was involved in the accident, they confronted him at his workplace. Although Hudson initially denied it, he ultimately admitted to accidentally striking and killing Kathleen. At his bench trial for Class C felony failure to stop after an accident resulting in death, defense counsel argued that Hudson could not be convicted because he did not know he had struck a person; put differently, he did not know he had been in an accident causing injury. Citing expert and eyewitness testimony as well as other evidence, the trial court rejected this claim and found Hudson guilty. The court sentenced Hudson to five years—two years executed on home detention through community corrections and three years suspended, two of them on probation.

Hudson challenges his conviction on appeal. Although he frames his argument as one of statutory interpretation, the issue before us is actually one of sufficiency, and we conclude that the evidence is sufficient to support Hudson's conviction. We therefore affirm the trial court.

**Facts and Procedural History**

Around 7:00 p.m. on a rainy evening in January 2013, Kathleen Clark was walking southbound along South Meridian Street near the intersection of Troy Avenue. Kathleen, a petite woman, was wearing dark clothing and carrying an umbrella. She was walking in the road because large bushes prevented her from walking next to it.

Hudson, who was driving southbound on Meridian Street in his Ford F-150 pickup truck, struck Kathleen.[1]  The impact fractured Kathleen's left leg and caused her head to rear back and strike the hood of Hudson's truck.  The accident fractured Kathleen's skull and lacerated her brain stem.  She died instantly.

Eyewitnesses standing outside a nearby bar, the Thirsty Turtle, heard the impact and looked toward the sound.  One eyewitness, Jeffrey Gerrard, described the sound as "a noise that we could tell a vehicle hit something."  State's Confidential Ex. 1.  Gerrard said it looked like Hudson's truck was pushing something, perhaps a box of trash.  *Id.* Gerrard later observed trash and an umbrella in the road.  *Id.*

Hudson did not stop after the accident.  He continued driving for half a mile, past other businesses, and eventually turned into a residential neighborhood.  One of the neighborhood's residents, David Lucid, saw Hudson drive into the neighborhood and noticed that one of his headlights was out.  Lucid watched as Hudson stopped under a street lamp, got out of his truck, and approached the front passenger side.  After a quick assessment, Hudson got into his truck again and drove away.  Hudson then returned to his home in Shelbyville.  He did not return to the scene of the accident or contact authorities.

Kathleen's body was found just before noon the following day in a grassy field fifteen to twenty feet away from Meridian Street.  Her coat was covering her body. Police found several of her possessions in and around the road, including her glasses, umbrella, and purse.  Several pieces of Hudson's truck were also found nearby.

---

[1] There is no evidence that Hudson was driving erratically or in an otherwise unsafe manner.  At Hudson's trial, an expert testified that the sole cause of the accident was Kathleen's presence in the roadway.  *See* Tr. p. 60 ("[T]he pedestrian, Kathleen Clark, by her pedestrian actions[,] was the sole cause of the crash.").  The State did not dispute this testimony.

Three days later, police received an anonymous tip that Hudson was involved in the accident. Hudson spoke to the police at his workplace and allowed them to search his truck, which had front-end damage and showed signs of repair. Hudson initially denied being in the area where the accident occurred and said that he believed his truck had been damaged in a parking lot in Castleton. Def.'s Ex. T. But when pressed, Hudson admitted that he was involved in the accident. *Id.* He claimed, however, that he never saw Kathleen and did not know that he hit a person—he believed he struck a wooden barrier or road sign. *Id.* Hudson admitted that he stopped in a nearby neighborhood after the accident to inspect his truck and then continued home. *Id.* He told police that he learned about Kathleen's death on the news two days after the accident. *Id.*

The State charged Hudson with Class C felony failure to stop after an accident resulting in death. At Hudson's bench trial, although all parties agreed that Kathleen's death was an accident, defense counsel presented evidence to support Hudson's claim that he never saw Kathleen. Defense counsel also argued that Hudson did not know he had been in an accident causing injury or death; thus, he could not be criminally liable for failing to stop.

The trial court rejected the defense's claim and convicted Hudson as charged:

I'm persuaded . . . by the evidence that [Hudson] did know that it was a person that he struck. [Hudson]'s expert . . . testified about the skull fracture that the victim sustained. And in his testimony [he] indicated that the skull fracture was caused when the victim's head hit the hood of the [] F-150 truck. Witnesses from across the street at the Thirsty Turtle heard a loud impact. It's clear they did from watching the video of their reaction. The[ir] head[s] snapped around when they – you can actually see the victim walking along the road and you can see their reaction to the noise. Additionally, those witnesses noted that [Hudson's] truck was actually pushing something and had to swerve to release whatever it was from . . .

4

the front of the truck. Another witness saw [Hudson] stop about a half a mile away. . . . And that area where the Thirsty Turtle is where the – that intersection is, it's clear that there are several areas of parking lots where [Hudson] could have pulled over immediately to inspect and comply with what the law requires. [A]nother witness described seeing an open umbrella at the scene. It strikes me that this is a very lightweight item that would likely be visible either in the air after the victim was struck or on the – in the roadway in [Hudson's] mirrors. Obviously I have nothing that supports that other than what . . . human experience would tell me if indeed [the victim] was holding the open umbrella as she walked. I'm persuaded also by the fact that [Hudson], in his statement to the police, lied. Said that he had never been in the area of the accident, that he'd never been – been there. And clearly, I think the evidence also supports that he may have been trying to hide some evidence of the crash by working to fix the headlight and obvious – and the damage [] to the truck. Although, human nature would say that a person would work to try to fix damage to their vehicle as quickly as possible, so I give that limited weight. But the fact that he lied to the police about ever having been there at all, it just lends support to the fact that he knew that he did something wrong by not stopping.

Tr. p. 248-49. The trial court sentenced Hudson to five years—two years executed on home detention through community corrections and three years suspended, two to probation.

Hudson now appeals.

**Discussion and Decision**

Challenging his conviction on appeal, Hudson contends that the trial court applied Indiana Code section 9-26-1-1 overbroadly. Specifically, he argues that the court "was equivocal about the level of knowledge it believed Hudson had or legally should have had to kick in the duties under the statute." Appellant's Br. p. 10. In fact, the trial court expressly found that Hudson knew that an accident with injury had occurred as required by Section 9-26-1-1.[2] The question then becomes whether the evidence in the record is

---

[2] Hudson suggests that the trial court disregarded this requirement. *See* Appellant's Br. p. 11. We disagree. The court stated:

5

sufficient to support that finding—and ultimately, Hudson's conviction for Class C felony failure to stop after an accident resulting in death. In other words, this query triggers a sufficiency-of-evidence analysis.

When reviewing the sufficiency of evidence, we do not reweigh evidence or judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the judgment. *Wood v. State*, 999 N.E.2d 1054, 1063-64 (Ind. Ct. App. 2013) (citation omitted), *trans. denied*, *cert. denied.* This review respects the factfinder's "exclusive province to weigh conflicting evidence." *Id.* (citing *Allen v. State*, 844 N.E.2d 534, 536 (Ind. Ct. App. 2006), *trans. denied*). We must affirm if a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt based upon the probative evidence and reasonable inferences drawn from the evidence presented. *Id.*

Indiana Code section 9-26-1-1 requires a driver involved in an accident that results in the injury or death of another person to stop, remain at the scene, and provide his name, address, and vehicle registration information. It provides:

> Except as provided in section 1.5 of this chapter, the driver of a motor vehicle involved in an accident that results in the injury or death of a person or the entrapment of a person in a vehicle shall do the following:
> (1) Immediately stop the driver's motor vehicle at the scene of the accident or as close to the accident as possible in a manner that does not obstruct traffic more than is necessary.
> (2) Immediately return to and remain at the scene of the accident until the driver does the following:

---

[I] do think that the law, the way it's written is in the disjunctive. And it says that – that there's that big (unintelligible) there. Damage to a – damage in the statute presents a duty to stop after an accident causing serious bodily injury or death, or as the big disjunctive in that statute. And because of that, the law is clearly with the State and against [Hudson] in this matter.

Tr. p. 249-50. Despite this somewhat ambiguous statement, the court had already expressly found that Hudson knew "that it was a person that he struck." *Id.* at 248.

(A) Gives the driver's name and address and the registration number of the motor vehicle the driver was driving.
(B) Upon request, exhibits the driver's license of the driver to the following:
    (i) The person struck.
    (ii) The driver or occupant of or person attending each vehicle involved in the accident.
(C) Subject to section 1.5(a) of this chapter, determines the need for and renders reasonable assistance to each person injured or entrapped in the accident, including the removal of, or the making of arrangements for the removal of:
    (i) each injured person from the scene of the accident to a physician or hospital for medical treatment; and
    (ii) each entrapped person from the vehicle in which the person is entrapped.
(3) Subject to section 1.5(b) of this chapter, immediately give notice of the accident by the quickest means of communication to one (1) of the following:
    (A) The local police department, if the accident occurs within a municipality.
    (B) The office of the county sheriff or the nearest state police post, if the accident occurs outside a municipality.

Ind. Code § 9-26-1-1.

If the driver knowingly or intentionally fails to meet any of the requirements imposed by the statute, he commits a criminal offense. Ind. Code § 9-26-1-8; *Barton v. State*, 936 N.E.2d 842, 848-49 (Ind. Ct. App. 2010), *trans. denied.* At the time Hudson committed the offense, if the accident resulted in the death of a person, the offense was a Class C felony. Ind. Code Ann. § 9-26-1-8(a)(2) (West. Supp. 2013). "The purpose of the statute is to provide prompt aid for persons who are injured or whose property is damaged and to sufficiently establish the identity of the parties so that they and police authorities may know with whom to deal in matters growing out of the accident." *Barton*, 936 N.E.2d at 842 (quoting *Runyon v. State*, 219 Ind. 352, 357, 38 N.E.2d 235, 237 (1941)).

7

This case turns on what Hudson knew about the accident in which Kathleen was killed. The trial court ultimately determined that Hudson knew that an accident with injury had occurred, and we agree.

"A driver's knowledge of the fact that an accident with injury has occurred is a necessary element of the proof in a prosecution for failure to stop." *Id.* at 849 (citing *State v. Gradison*, 758 N.E.2d 1008, 1011 (Ind. Ct. App. 2001) & *Micinski v. State*, 487 N.E.2d 150, 152-53 (Ind. 1986)). Yet a driver need not have actual knowledge that an accident has resulted in an injury to be convicted under the statute. *Id.* "Where conditions were such that the driver should have known that an accident occurred or should have reasonably anticipated that the accident resulted in injury to a person, the requisite knowledge is present." *Id.* When a driver prosecuted for failure to stop asserts that he did not know he was involved in an accident causing injury, "that assertion is a defense that goes to the issue of whether he possessed the requisite mens rea," and the credibility of that defense is an issue for the factfinder. *Id.* (citing *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)). The trier of fact may infer a defendant's knowledge from circumstantial evidence. *Id.* (citing *Germaine v. State*, 718 N.E.2d 1125, 1132 (Ind. Ct. App. 1999), *trans. denied*).

Here, the trial court inferred Hudson's knowledge from the following evidence:

- Expert testimony that Kathleen's skull fracture was caused by her head hitting the hood of Hudson's truck
- The noise from the accident and the reaction of nearby witnesses
- Eyewitness testimony that Hudson's truck was pushing something and had to swerve to release it
- Eyewitness testimony that an open umbrella was lying in the road after the accident

8

- Testimony that Hudson stopped to assess the damage to his truck about half a mile from the scene of the accident in a residential neighborhood, bypassing parking lots and businesses located near the scene of the accident
- Hudson's initial lies to police
- Hudson's attempt to quickly repair the damage to his truck

*See* Tr. p. 248-49. Based on this and other evidence, the court found Hudson guilty of Class C felony failure to stop after an accident resulting in death. On appeal, we may not reweigh the evidence or reassess the credibility of the witnesses who provided it. *Wood*, 999 N.E.2d at 1064. We find the evidence sufficient to support Hudson's conviction.

Finally, Hudson attacks his conviction—and Section 9-26-1-1—by arguing that he might have been unable to comply with the statute if he had he returned to the scene of the accident, because he might not have discovered Kathleen's body. *See* Appellant's Br. p. 11-12 ("[I]t is highly likely that Hudson would not have even found [Kathleen's body] and therefore it would have been impossible for him to fulfill his duties as required by Indiana Code [section] 9-26-1-1."), 13-14 ("Had Hudson returned and been unable to confirm he struck a person and the person suffered injury or had died, there would have been no need to perform the additional duties. However . . . [the trial court] essentially imposed the duties regardless of their ability to be performed."). But Hudson was not prosecuted for such hypothetical failures. Rather, Hudson—who knew that he had struck a person with his truck—was prosecuted for failing to stop, remain at the scene, and provide necessary information to police. There is no dispute that Hudson failed to do these things, and we decline to speculate about what might have occurred if Hudson had returned to the scene of the accident.

Affirmed.

9

FRIEDLANDER, J., and MAY, J., concur.