## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 04 2020, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Lakeisha Murdaugh
Russell Brown
King, Brown & Murdaugh, LLC
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Yariel Butler,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 4, 2020

Court of Appeals Case No.
20A-CR-801

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause No.
79D02-1808-F5-141

**Crone, Judge.**

# Case Summary

A jury convicted Yariel Butler of two counts of level 5 felony leaving the scene of an accident resulting in death and one count of class A misdemeanor leaving the scene of an accident resulting in bodily injury. Butler now appeals, challenging the sufficiency of the evidence to support her convictions and the trial court's refusal to give a mistake-of-fact jury instruction. She also challenges the trial court's treatment of aggravating and mitigating circumstances during sentencing and claims that her eight-year aggregate sentence is inappropriate in light of the nature of her offenses and her character. We affirm her convictions and sentence.

# Facts and Procedural History

The facts most favorable to the verdict are as follows. Around 2:00 a.m. on August 1, 2018, Kimberly McDole was driving northbound in heavy fog on a four-lane highway between Frankfort and Lafayette, when she slid off the road and into an adjacent cornfield. She phoned William Peacock, who came and picked her up. The two drove to her home and contacted the sheriff's office, and a sheriff's deputy called a wrecker on McDole's behalf. McDole and Peacock returned to her vehicle, and Peacock parked his vehicle a little further up on the northbound shoulder. Shortly thereafter, Robert Carley arrived in his tow truck, wearing a reflective yellow vest. He activated the emergency lights on his tow truck and pulled McDole's vehicle out of the field and back to the northbound shoulder. He pulled his tow truck into the right northbound lane and parked it at an angle for protection as he tended to McDole's vehicle. His

emergency lights remained activated. Several vehicles passed safely by in the left northbound lane. When Carley had finished tending to McDole's vehicle, he took it across the highway to a parking lot adjacent to the southbound lanes. He went back to the opposite side, and he, McDole, and Peacock stood huddled on the northbound shoulder near the passenger's side of the tow truck while they completed the paperwork for the tow.

[3] Just after 4:00 a.m., Butler finished her work shift and was driving northbound on the same highway in her full-sized SUV. As she approached the tow truck, she slammed on her brakes, veered right, struck McDole, Peacock, and Carley with the front driver's side of her SUV, and drove into a ditch. She accelerated through the ditch, fishtailed as she accelerated back onto the roadway, and drove out of sight. Carley had suffered a leg injury but was able to crawl around and locate his cell phone. He called 911.

[4] Meanwhile, Butler did not stop and did not call 911, although there were places to pull over and make a call. She picked up a friend and drove home. She could not get out of her driver's door due to the damage and had to exit through the back door. When her friend inquired about the damage to her SUV, she told him that someone had run her off the road and driven away. She later admitted that she had lied to him about the cause of the crash because she was embarrassed. She went to sleep and did not examine the damage to her SUV until she awakened hours later. The driver's side of her vehicle and front driver's side headlight had sustained damage, and the headlight casing was broken and dangling. A different friend advised her to report the accident to

her insurance company, and she did so, repeating the story of being sideswiped by a hit-and-run driver. She did not file a police report and, later that day, took a different route to work that did not go by the crash site.

[5] As a result of the collision, Peacock suffered rib and pelvic fractures as well as internal hemorrhaging. He died of his injuries at the hospital shortly after the crash. McDole was resuscitated at the scene and transported to an Indianapolis Hospital with multiple fractures, a large open wound on her back side, and brain hemorrhages. She received blood and plasma transfusions but ultimately was taken off life support and died of her injuries a couple weeks later. Carley suffered bruising and a leg injury.

[6] Around 4:00 a.m. on August 2, 2018, Butler was stopped by Officer John Dale for a malfunctioning headlight. During the stop, Officer Dale observed extensive damage to Butler's SUV, including a protruding bumper, a missing driver's side mirror, and a dent that prevented her from exiting through the driver's door. Butler informed the officer that she had been involved in an accident the night before, and the officer took her to the police station for questioning. During an interview with Detective Jon Eads, Butler gave varying accounts that included having been sideswiped by a black truck, construction truck, or semi. She said that she had reached down to unplug her phone charger but did not take her eyes off the road. State's Ex. 64. She said, "I know I hit something but I didn't see anything like when I did it and it all happened so fast. It was like as quick as I hit whatever, whatever impacted with my truck and it got back on the road, and that was it, I came home." *Id.* When the

detective confronted her about the acceleration marks from where she had skidded from the ditch back onto the roadway and asked her why she did not stop, she said, "I was just trying to get home." *Id*. She admitted that she had heard the impact, stating, "[I]t was just a loud bang." *Id*. She stated that she thought she had just hit a truck but also said, "I was praying to God that I didn't hurt anyone." *Id*. She admitted that she knew that Indiana law required her to "call the police" when she was involved in a crash, but she said that she did not do so because she was afraid and thought that her SUV might get taken away from her. *Id*. She also said that she just did not think to call 911 and planned to do so when she got home but went to bed and "wanted to call" before work later that day but did not do so. *Id*. She admitted that she saw the human tissue that was on her vehicle but said that she thought it was food. *Id*.

[7]     The State charged Butler with two counts of level 5 felony leaving the scene of an accident resulting in death and one count of class A misdemeanor leaving the scene of an accident resulting in bodily injury. During her trial, Butler proffered a jury instruction on mistake of fact, but the trial court refused it. The jury convicted Butler as charged.

[8]     During sentencing, the trial court identified aggravating and mitigating circumstances and found that the aggravators outweighed the mitigators. The court sentenced Butler to three years and four years for the level 5 felony convictions relating to the deaths of Peacock and McDole, respectively, and one year for the class A misdemeanor conviction, to be served consecutively. The court ordered that Butler serve two years of her sentence in the Indiana

Department of Correction (DOC), followed by two years in community corrections/house arrest, and then four years on supervised probation. Butler appeals her convictions and sentence. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – The evidence is sufficient to support Butler's convictions.

Butler challenges the sufficiency of the evidence to support her convictions. When reviewing a challenge to the sufficiency of evidence, we neither reweigh evidence nor judge witness credibility. *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015). Rather, we consider only the evidence and reasonable inferences most favorable to the verdict and will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* Reversal is appropriate only when reasonable persons would be unable to form inferences as to each material element of the offense. *McCray v. State*, 850 N.E.2d 998, 1000 (Ind. Ct. App. 2006), *trans. denied*. The evidence need not "overcome every reasonable hypothesis of innocence." *Dalton v. State*, 56 N.E.3d 644, 647 (Ind. Ct. App. 2016) (quoting Drane v. State, 867 N.E.2d 144, 147 (Ind. 2007)), *trans. denied*.

The jury convicted Butler of two counts of leaving the scene of an accident resulting in death and one count of leaving the scene of an accident resulting in

bodily injury. Indiana Code Section 9-26-1-1.1 (2017) provides, in relevant part,

> (a) The operator of a motor vehicle involved in an accident[1] shall do the following:
>
> (1) Except as provided in section 1.2 of this chapter,[2] the operator shall immediately stop the operator's motor vehicle:
>
> (A) at the scene of the accident; or
>
> (B) as close to the accident as possible;
>
> in a manner that does not obstruct traffic more than is necessary.
>
> (2) Remain at the scene of the accident until the operator does the following:
>
> (A) Gives the operator's name and address and the registration number of the motor vehicle the operator was driving to any person involved in the accident.
>
> (B) Exhibits the operator's driver's license to any person involved in the accident or occupant of or any person attending to any vehicle involved in the accident.
>
> (3) If the accident *results in* the injury or death of another person, the operator shall, in addition to the requirements of subdivisions

---

[1] "For purposes of this chapter, an accident does not require proof of a collision between a driver's motor vehicle and another vehicle or another person if the accident involves serious bodily injury to or the death of a person." Ind. Code § 9-26-1-0.5.

[2] Indiana Code Section 9-26-1-1.2 imposes upon the driver a duty to move her vehicle from the traveled portion of the roadway to a location as close to the accident as possible unless the accident involves transportation of hazardous materials or results in injury, death, or entrapment of a person in a vehicle.

(1) and (2):

(A) provide reasonable assistance to each person injured in or entrapped by the accident, as directed by law enforcement officer, medical personnel, or a 911 telephone operator; and

(B) as soon as possible after the accident, immediately give notice of the accident, or ensure that another person gives notice of the accident, by the quickest means of communication to one (1) of the following:

(i) The local police department, if the accident occurs within a municipality.

(ii) The office of the county sheriff or the nearest state police post, if the accident occurs outside a municipality.

(iii) A 911 telephone operator.

….

(b) An operator of a motor vehicle who knowingly or intentionally fails to comply with subsection (a) commits leaving the scene of an accident, a Class B misdemeanor. However, the offense is:

(1) a Class A misdemeanor if the accident *results in* bodily injury to another person;

….

(3) a level 5 felony if the accident *results in* the death of another person[.]

(Emphases added.)[3]

"Where conditions were such that the driver should have known that an accident occurred *or* should have reasonably anticipated that the accident resulted in injury to a person, the requisite knowledge is present." *Barton v. State*, 936 N.E.2d 842, 849 (Ind. Ct. App. 2010) (emphasis added), *trans. denied*. A jury may infer a driver's knowledge based on circumstantial evidence. *Hudson v. State*, 20 N.E.3d 900, 905 (Ind. Ct. App. 2014).

Butler does not dispute that she was driving a vehicle and was involved in an accident. Nor does she dispute that her SUV, in fact, struck the victims. Rather, she claims that the evidence was insufficient to establish that "she knew she had hit a person." Appellant's Br. at 19. As support for her assertion that she lacked knowledge that she struck the victims, she points to the low visibility, the fact that her airbag did not deploy, and the fact that she reported to work as scheduled the next day. She also claims that she had no reason to know that the substance on her vehicle was human tissue and that she thought the tissue was food or mud.

Butler's assertions not only amount to an impermissible invitation to reweigh evidence but also ignore her legal responsibility under subsection (a) of the statute. She knew that she was involved in an accident, and that fact, standing

---

[3] Subsection (c) of the statute specifically allows the operator to be charged with more than one count when more than one person is injured or killed, and subsection (d) specifically allows the trial court to impose consecutive sentences.

alone, triggered the requirement that she stop immediately at the scene of the accident or as near as possible to it. She did not stop. Her duty to stop was not dependent on her knowledge that she had actually struck a person, but only on the fact that she was in an accident, which she admits. Her crimes stem from leaving the scene of that accident. She admitted to Detective Eads that Indiana law requires a person to "call the police" when he/she is involved in an accident, but she said that she did not do so because she was afraid and thought that her SUV might get taken away from her. State's Ex. 64. Yet, she now claims that the State was required to demonstrate that she knew at the moment of impact that she had struck a person.

[14] We disagree, for two reasons. First, the death and injury elevations of the offense of leaving the scene pertain to the *results* of the driver's conduct (injury and death) and are not dependent on the State's demonstration of intent or knowledge, at the moment of impact, that an injury or death resulted. Second, in reality, personal injury to or the death of another person often is not ascertainable until the driver stops and observes the damage. Butler did not even stop, let alone call 911 or render aid to the victims. She knowingly failed to comply with the statute. Thus, Butler's insufficiency argument is meritless. The evidence and reasonable inferences most favorable to the jury's verdict are sufficient to support Butler's convictions.

## Section 2 – The trial court acted within its discretion in refusing Butler's mistake-of-fact jury instruction.

In a closely related argument, Butler asserts that the trial court erred in refusing her proposed jury instruction on mistake of fact. Indiana Appellate Rule 46(A)(8)(e) states, "When error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto." Butler has failed to set out her proposed instruction in her brief. She characterizes her proposed instruction as a pattern jury instruction, but she does not designate the number of that pattern jury instruction. She therefore has waived the issue for our consideration. *See Watson v. State*, 972 N.E.2d 378, 382 n.2 (Ind. Ct. App. 2012) (appellant waives issue by failing to comply with Appellate Rule 46(A)(8)(e)'s requirement to set out instruction verbatim in argument section of brief).

Waiver notwithstanding, we review a trial court's rulings on proposed jury instructions for an abuse of discretion. *Barton*, 936 N.E.2d at 853. "The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Isom v. State*, 31 N.E.3d 469, 484 (Ind. 2015) (internal quotation marks omitted), *cert. denied* (2016). In determining whether a trial court properly refused an instruction, we consider "(1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether

the substance of the tendered instruction is covered by other instructions that are given." *Barton*, 936 N.E.2d at 853.

[17] Butler's proposed instruction reads:

> It is an issue whether the Defendant mistakenly committed the acts charged.
> It is a defense that the Defendant was reasonably mistaken about a matter of fact if the mistake prevented the Defendant from knowingly or intentionally committing the acts charged. The State has the burden of proving beyond a reasonable doubt that the Defendant was not reasonably mistaken.

Appellant's App. Vol. 2 at 131; Tr. Vol. 3 at 126.

[18] The instruction was offered as a pattern jury instruction based on Indiana Code Section 35-41-3-7, with a proper common law statement of the State's burden of proof, and therefore is a correct statement of the law. We therefore turn to whether the evidence in the record supports the giving of such an instruction. For mistake of fact to be a valid defense, three requirements must be satisfied: "(1) the mistake must be honest and reasonable; (2) the mistake must be about a matter of fact; and (3) the mistake must negate the culpability required to commit the crime." *Barton*, 936 N.E.2d at 854. Honesty is a subjective test dealing with what the defendant/driver actually believed; reasonableness is an objective test for ascertaining what a reasonable person situated in similar circumstances would do. *Id*. To conclude that the trial court has abused its discretion in refusing to give the proposed instruction, we must find some evidence of both honesty and reasonableness of the alleged mistake. *Id*.

Butler claims that she was mistaken about having struck and/or injured anyone. Her changing stories, avoidance of the crash site, and admission that she prayed that she had not injured anyone support a reasonable inference that, deep down, she suspected that she had injured someone. Even if her subjective beliefs were honest, the evidence shows that they were not reasonable. The ubiquitous presence of human tissue on the front driver's side of her vehicle and the extensive damage to the vehicle support an inference that any mistake she made was not reasonable. Moreover, as discussed in Section 1, any mistaken impression or assumption on Butler's part that her conduct resulted in injury or death did not negate the culpability required for her to have committed her offenses. If anything, her alleged mistake was a mistake of law, not a mistake of fact. Simply put, the evidence in the record did not support the giving of a mistake-of-fact instruction and such an instruction likely would have confused or misled the jury. We find no abuse of discretion here.

## Section 3 – The trial court acted within its discretion in its treatment of aggravating and mitigating circumstances during sentencing.

Butler also challenges the trial court's treatment of aggravating and mitigating circumstances during sentencing. Sentencing decisions rest within the sound discretion of the trial court, and so long as a sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. An abuse of discretion occurs where the trial court's decision is clearly against the logic

and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. *Sloan v. State*, 16 N.E.3d 1018, 1026 (Ind. Ct. App. 2014). One of the ways in which a trial court may abuse its discretion is if the sentencing statement identifies aggravating factors that "are improper as a matter of law." *Anglemyer*, 868 N.E.2d at 491.

[21] In its sentencing order, the trial court identified as aggravating circumstances "the overall seriousness of the offenses; the circumstances surrounding her failure to report; and harm, injury or loss suffered by the victims' families, especially the McDole family, are far greater than necessary to prove the elements of the offense." Appealed Order at 1. The court identified as mitigating circumstances Butler's young age (nineteen), lack of criminal history (diminished by her admission of sustained prior use of marijuana), likelihood of responding well to probation and/or short-term incarceration, expression of remorse, good employment history, family support, and a finding of unlikelihood of recurrence. *Id*. at 2.

[22] Butler claims that the trial court improperly designated as an aggravator a material element of her offenses. A trial court may not use a material element of the offense as an aggravating factor, but it may find the nature and particularized circumstances surrounding the offense to be an aggravating factor. *Caraway v. State*, 959 N.E.2d 847, 850 (Ind. Ct. App. 2011), *trans. denied* (2012). In other words, "[w]here a trial court's reason for imposing a sentence greater than the advisory sentence includes material elements of the offense, absent something unique about the circumstances that would justify deviating

from the advisory sentence, that reason is 'improper as a matter of law.'" *Gomillia v. State*, 13 N.E.3d 846, 852-53 (Ind. 2014) (quoting *Anglemyer*, 868 N.E.2d at 491). "Even if the trial court relied on an improper factor under this aggravating circumstance, the sentence may be upheld so long as [t]he remaining components of that aggravator were proper." *Id.* at 853 (quoting *McCann v. State*, 749 N.E.2d 1116, 1120 (Ind. 2001)).

[23] Butler focuses her improper aggravator argument on the trial court's finding that the harm, injury, or loss suffered by McDole's family was far greater than necessary to prove the elements of the offense. This is not a material element of the offense of leaving the scene of an accident that resulted in death. Victim impact is often considered when imposing a sentence, and here, the record shows that neither McDole nor Peacock died immediately and that McDole lingered in the hospital for weeks. The court noted that McDole was a single mother who left behind two grieving sons. One of her sons read a victim impact letter during sentencing, emphasizing the compassion that he knew his mother would have felt toward Butler, yet requesting a strict sentence as a consequence of Butler's actions. The other submitted a heart-wrenching letter describing his mother's endurance in raising two sons by herself and articulating the immeasurable, continuing pain that he had experienced in losing his "rock and anchor." Appellant's App. Vol. 3 at 25. He described the additional pain that he suffered in having to make the decision to disconnect his mother's life support machines and then watching her slowly die. Butler's characterization of these statements as nothing out of the ordinary for grieving sons simply is not

convincing. This does not amount to an improper aggravator as a matter of law, as Butler suggests.

[24] Butler also claims that the trial court abused its discretion in failing to articulate how it balanced the aggravating and mitigating circumstances. However, we remind her that since *Anglemyer*, a court is no longer obligated to weigh aggravators and mitigators against each other. 868 N.E.2d at 491. In fact, with respect to the issue of whether the court abused its discretion in its treatment of aggravators and mitigators, most of Butler's cited case law is pre-*Anglemyer*, and speaks in terms of enhanced sentences and presumptive rather than advisory sentences. These cases are inapposite. In short, Butler has failed to carry her burden of demonstrating that the trial court abused its discretion in its treatment of aggravating and mitigating circumstances.

## Section 4 – Butler has failed to meet her burden of demonstrating that her sentence is inappropriate in light of the nature of her offenses and her character.

[25] Butler also asks that we reduce her sentence pursuant to Indiana Appellate Rule 7(B), which states that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). When a defendant requests appellate

review and revision of her sentence, we have the power to affirm or reduce the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010).

[26] In conducting our review, our principal role is to leaven the outliers, focusing on the length of the sentence and how it is to be served. *Bess v. State*, 58 N.E.3d 174, 175 (Ind. 2016); *Foutch v. State*, 53 N.E.3d 577, 580 (Ind. Ct. App. 2016). This allows for consideration of all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). We do "not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Foutch*, 53 N.E.3d at 581 (quoting *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied* (2014)). The defendant bears the burden of persuading this Court that her sentence meets the inappropriateness standard. *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016).[4]

---

[4] We note that Butler incorrectly relies on *Gibson v. State*, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006), which was decided while transfer was pending in *Anglemyer*. The *Gibson* court acknowledged the uncertainty surrounding appellate review of sentences and anticipated, correctly, that our supreme court would provide guidance in *Anglemyer*. And the *Anglemyer* court did just that, explaining in relevant part that our analysis under Rule 7(B) does not involve an assessment of the trial court's recognition or nonrecognition of aggravators or mitigators as an initial guide. 868 N.E.2d at 487-93; *see also Turkette v. State*, 151 N.E.3d 782, 787 n.5 (2020), *trans. denied*.

[27]     In considering the nature of Butler's offenses, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Green v. State*, 65 N.E.3d 620, 637-38 (Ind. Ct. App. 2016), *trans. denied* (2017). When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011).

[28]     Here, the State recommended an eleven-year aggregate sentence, with eight years executed in the DOC and three years in community corrections. The trial court sentenced Butler to an aggregate eight-year term for her three convictions. Her sentence comprises a three-year and a four-year term for each of her two level 5 felony convictions and a one-year term for her class A misdemeanor conviction. A level 5 felony carries a sentencing range of one to six years, with a three-year advisory term. Ind. Code § 35-50-2-6. A person convicted of a class A misdemeanor shall be imprisoned for not more than one year. Ind. Code § 35-50-3-2.

[29]     Butler received the advisory term for one of her level 5 felony convictions and just one year above the advisory term for the other. The overall length of Butler's sentence is largely attributable to consecutive terms, which she does not challenge and which is specifically authorized by statute for the offense of leaving the scene of an accident. Ind. Code § 9-26-1-1.1(d) ("A court may order terms of imprisonment imposed on a person convicted of more than one

(1) offense"). Also significant is the manner and place of Butler's service of sentence, with two years in the DOC followed by two in community corrections, and suspended four years to supervised probation. *See Davidson*, 926 N.E.2d at 1025 (manner and place where defendant serves her sentence are highly relevant considerations when evaluating appropriateness of sentence).

[30] In examining the nature of Butler's offenses, we must emphasize that her crime was not *being* in the accident but *leaving* the scene of it, in violation of Indiana law. As such, factors such as the foggy weather, which might explain her failure to avoid a collision, do not explain her failure to stop, call for help, and render aid. She struck three people, one of whom was a tall man weighing 350 pounds, then skidded, fishtailed, and accelerated as she fled the crash site. She went home, yet still did not report the crash. Meanwhile, the three victims lay languishing on the roadside in the foggy predawn hours. Aid eventually came, but not because of anything that Butler did; it came because the injured Carley mustered up the strength to crawl around, locate his cell phone, and call 911. Peacock died from his injuries not long after, and McDole lingered in the hospital and eventually was taken off life support. The nature of Butler's offenses does not militate toward a reduced sentence.

[31] We conduct our review of Butler's character by engaging in a broad consideration of her qualities. *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*, 11 N.E.3d 571. An offender's character is shown by her "life and conduct." *Adams v. State*, 120 N.E.3d 1058, 1065 (Ind. Ct. App. 2019). "When considering the character of the offender, one

relevant fact is the defendant's criminal history." *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied* (2016). Use of illegal drugs is also relevant in analyzing the defendant's character. *Rich v. State*, 890 N.E.2d 44, 54 (Ind. Ct. App. 2008), *trans. denied*.

[32] Butler is relatively young and does not have a criminal history. The trial court considered this during sentencing but also considered Butler's admission that she had used marijuana regularly up to and around the time of the crash, thus indicating that she had not been living an entirely law-abiding life. That said, Butler enjoys the support of family and friends and, by all accounts, appears to be a hard worker. We are sensitive to the probable impact of these convictions on what appear to have been her bright prospects. However, we are troubled by Butler's conduct, not merely immediately after the accident but also over the ensuing days. She did not come forward but was apprehended only because a police officer noticed her malfunctioning headlight and made a traffic stop. Her accounts of the accident spanned the spectrum, but each one deflected blame. She began by asserting that she had been the victim of a hit-and-run vehicle. She used this story in making a false claim with her insurance company. She initially pitched a similar story to the arresting officer and detectives but then shifted the blame to the fog. Butler's behavior reflects negatively on her character and does not militate toward a reduced sentence.

[33] In sum, the trial court imposed a sentence that extends compassion to Butler in its manner and place of service and, at the same time, reflects the magnitude of the offenses and the pain, loss, and grief suffered by the victims and their

families.  Butler has failed to carry her burden of demonstrating that her sentence is inappropriate in light of the nature of her offenses and her character.

[34]    Affirmed.

Najam, J., and Riley, J., concur.